[No. 23312.   Department Two.   December 23, 1931.]

GLOBE ELECTRIC COMPANY, *Respondent*, v. UNION
LEASEHOLD COMPANY *et al., Appellants.*[1]

[1]Reported in 6 P. (2d) 394.

*Grinstead, Laube, Laughlin & Meakim,* for appellant Union Leasehold Company.

*Poe, Falknor, Falknor & Emory,* for appellant Vance Lumber Company.

*Grosscup & Morrow* and *John Ambler,* for appellant Mary H. Murray.

*Riddell, Brackett & Fowler,* for respondent.

BEALS, J.—Plaintiff, Globe Electric Company, a corporation (hereinafter referred to as the Globe Co.), has been for many years engaged in business as a wholesale dealer in electrical supplies, numbering among its patrons Burton Dinsmore, a contractor who specialized in the installation of electrical equipment. Defendant Mary H. Murray, a widow, during the year 1920 acquired the title to a tract of land on the corner of Third avenue and Union street, Seattle, her title being subject to a fifty year lease which provided for the erection by the lessee of a building which, at the termination of the lease, should become the property of the owner of the fee. Defendants Union Leasehold Company (hereinafter referred to as the Union Co.) and Vance Lumber Company (hereinafter referred to as the Vance Co.), corporations, jointly own the lease, under assignments from prior lessees, the precise nature of their respective interests being unimportant.

During the month of June, 1929, the Union Co. awarded Mr. Dinsmore a contract for the installation of the electrical equipment (the contract price being something under twenty thousand dollars) in the building which was being constructed pursuant to the lease above referred to. At this time, Mr. Dinsmore was

indebted to the Globe Co. in the sum of approximately $3,600 for material which he had purchased and used on other jobs, and, July 15, 1929, Mr. Dinsmore executed and delivered to the Globe Co. two trade acceptances, payable September 15 and October 15, 1929, respectively, aggregating in amount $2,859.44. The day after receiving these trade acceptances, the Globe Co. discounted them at its bank, where they were left for the purpose of collection from Mr. Dinsmore's account, as they should fall due.

Shortly after the time of the execution of the contract between the Union Co. and Mr. Dinsmore, the secretary of the Globe Co. accompanied Mr. Dinsmore to the office of a bonding company, where Mr. Dinsmore was to procure the bond which he was required to execute in favor of the Union Co., on which occasion Mr. Dinsmore stated, in the presence of the representative of the Globe Co., who then recommended Mr. Dinsmore as a good risk, that he owed the Globe Co. no more than $750, that being his indebtedness over and above the two trade acceptances; the fact being that, at that time, Mr. Dinsmore owed the Globe Co., including the acceptances, over $3,600.

Mr. Dinsmore entered upon the work under his contract soon after July 15, 1929, and the Globe Co. made its first delivery of material July 25. The Union Co. made to Mr. Dinsmore payments under the contract, the first in the sum of $552.50, August 5, 1929, and the last May 6, 1930, the payments aggregating $19,055.99. Mr. Dinsmore deposited in his bank account the money which he received from the Union Co., and the bank paid therefrom the amount of the trade acceptances above referred to. July 31, 1929, Mr. Dinsmore's bank balance amounted to $474.63, and all the sums deposited by Mr. Dinsmore during the months of August,

September and October came from the job with which we are here concerned, save the amount of approximately $850 received from other sources.

During the months of June, July, August and September, the Globe Co. furnished Mr. Dinsmore, for jobs other than the one with which we are here concerned, material of the value of $290.84, and during the period mentioned, together with the month of October, received from him, on account of material furnished for other jobs, the sum of two hundred dollars. The Globe Co. furnished for the building with which we are here concerned, on order of Mr. Dinsmore, material of the value of $15,984.13, and filed a lien for an unpaid balance of $7,129.47 of this amount.

This action was brought to foreclose this lien, and the court awarded the Globe Co. a recovery in the sum of $6,516.21; it appearing on the trial that material to the amount of $636.60 had been in fact used by Mr. Dinsmore for installations which he had made on orders received by him from prospective tenants of the building, who were equipping their own quarters therein, a further credit having been entered after the trial by the application to the Globe account of the retained percentage still in the hands of the Union Co., under its contract with Mr. Dinsmore, in the sum of $3,546.56.

From the judgment of foreclosure in the sum of $3,399.68, together with interest and attorney's fee in the sum of six hundred dollars, the Union Co. and the Vance Co. have jointly appealed, and Mary H. Murray has prosecuted a separate appeal on her own behalf.

▪ We shall first discuss the questions presented by Mrs. Murray on her appeal. Section 1129, Rem. Comp. Stat., among other things, creates a statutory agency which, under certain circumstances, may re-

sult in the creation of a situation which will allow those whose labor or material have aided in the improvement of real estate a lien thereon for the amount due. Section 1133 provides, however, that as a prerequisite to the establishment of such a lien in favor of a materialman, he must, within the time provided, "deliver or mail to the owner or reputed owner of the property" a written notice stating that he has commenced to deliver materials and supplies for use on the property, together with certain other information, as provided in the section of the statute referred to. Appellant Mary H. Murray, during the year 1920, acquired title to the real estate with which we are here concerned, and was the owner thereof up to the time of trial.

In the case of *Seattle Lighting Fixture Co. v. Broadway Central Market,* 156 Wash. 189, 286 Pac. 43, 1119, it was held that, under a contract between the owner of land and a lessee thereof, which contract obligated the lessee to construct a building thereon which should become the property of the owner at the termination of the lease, the lessee became, under § 1129, above referred to, the statutory agent of the owner for the purpose of constructing the building.

From the record in the case at bar, it appears that respondent, prior to the time it commenced to furnish materials on Mr. Dinsmore's order, investigated the ownership of the real property upon which the materials were to be placed, and, as the result of its investigation, gave the notice provided for by § 1133 to the Union Co. and the Vance Co., as owners or reputed owners of the premises. The trial court made a specific finding concerning the investigation made by respondent as to the ownership of the land, in which is set forth at length the situation disclosed by this investigation. While this indicates that the matter of the ownership

of the lease of the premises was rather confused, Mrs. Murray's fee title is clearly indicated.

Respondent argues that, under the circumstances here shown, the owner of the fee and the lessee, who was to construct a building thereon, title to which should vest in the owner at the termination of the lease, were engaged in a joint enterprise, and that, under such circumstances, notice by a materialman to the lessee, as owner or reputed owner, should be held sufficient. Respondent, in effect, argues that, under such circumstances, the lessee, in addition to becoming the statutory agent of the owner under § 1129, acts on behalf of the owner in another capacity, that of joint adventurer, and should, for the purposes of the lien law, be considered as the owner or reputed owner of the land.

When materials to be used in the improvement of real estate are furnished on the order of the owner's statutory agent, the failure to give to the owner or reputed owner the notice required by the statute defeats the right of lien. *Colby & Dickinson v. McCulloch*, 145 Wash. 561, 261 Pac. 86; *Cloud v. Greenwood Logging Co.*, 157 Wash. 261, 288 Pac. 910.

The ownership of land is entirely separate and distinct from the right of a lessee under a lease. We find no authority for respondent's contention that, under the circumstances here shown, notice to the lessee, as owner or reputed owner, is sufficient to establish a proper basis for respondent's right of lien. Neither are we impressed by the logic of respondent's argument upon this phase of the case. We find in the record no justification for the claim that appellants Union Co. and Vance Co. were the owners or reputed owners of the premises. They owned and controlled a lease thereof, but were not the owners.

We are entirely satisfied with the rule laid down in the case of *Seattle Lighting Fixture Co. v. Broadway Central Market, supra,* but are not disposed to extend the rule so far as to hold that a lessee, under the circumstances disclosed by the record before us, may be treated as the owner or reputed owner of the premises, and as such given notice of the furnishing of material to be used thereon, and that thereby the fee of the land may be subjected to a lien for the value of such material. In so far as appellant Mary H. Murray is concerned, the judgment appealed from must be reversed, and the action dismissed.

Appellants Union Co. and Vance Co. contend, in the first place, that respondent should not have been allowed a lien in any amount; in the second place, they argue that, in any event, the trial court should have reduced the amount for which a lien was allowed, deducting therefrom the sum of $2,859.44, the aggregate of the two trade acceptances above referred to; and, finally, they object to the allowance of an attorney's fee.

Appellants urge that respondent does not come into court with clean hands, as the evidence shows that it took an unfair advantage of appellants in connection with the matters hereinafter discussed, and that, therefore, it is not entitled to any lien upon appellants' leasehold.

Appellants' principal contention, upon which the question above referred to depends, is that respondent was a party to a wrongful diversion of funds paid by appellants to Mr. Dinsmore, and used in taking up the two trade acceptances, which represented indebtedness from Mr. Dinsmore to respondent on account of material sold by respondent to Mr. Dinsmore and used by him on other jobs prior to the time Mr. Dinsmore en-

tered into the contract with appellants. Appellants rely upon Rem. Comp. Stat., § 2604, which reads as follows:

"Every person having entered into a contract to supply any labor or materials for the value or price of which any lien might lawfully be filed upon the property of another, who shall receive the full price or consideration thereof, or the amount of any account stated thereon, shall be deemed within the meaning of section 2601, subdivision 3, to receive the same as the agent of the party with whom such contract was made, his successor or assign, for the purpose of paying all claims for labor and materials supplied,"

considered in connection with the third paragraph of § 2601:

"Every person who, with intent to deprive or defraud the owner thereof . . .

"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation or as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto;
. . .

"Steals such property and shall be guilty of larceny."

Appellants argue that, under these sections, moneys paid by them to Mr. Dinsmore were trust funds, and that, therefore, the trade acceptances were paid with the proceeds of a larceny, and that appellants may follow the funds and now have the right to an order applying the same in reduction of respondent's claim. It clearly appears that the officers of respondent knew that Mr. Dinsmore was receiving money from appel-

lants under his contract with them, and that some of the money paid to Mr. Dinsmore by appellants under this contract might be applied to the payment of the trade acceptances.

We are satisfied that respondent, in taking the trade acceptances and in discounting them July 15, 1929, was not guilty of fraud, either actual or constructive. It is not contended that Mr. Dinsmore did not owe to respondent the amount represented by the documents, and an acknowledgment of the debt and the steps taken to promise payment of the indebtedness were entirely proper. It was, of course, a fair assumption that Mr. Dinsmore would realize a profit from his contract with appellants, and respondent was entitled to expect that at least some part of this anticipated profit would be applied on its old account. It clearly appears from the record that Mr. Dinsmore had been a customer of respondent for over ten years, and that he had purchased from it much material which had been used on many jobs, continuing up to the time he commenced work for appellants.

Mr. Dinsmore maintained his bank account in the National Bank of Commerce, and deposited therein the moneys which he received as proceeds of the different contracts under which he was employed. July 31, 1929, Mr. Dinsmore had in his account a balance of $474.63; this being prior to the receipt by him of any money from appellants. During the months of August, September and October, Mr. Dinsmore received from appellants $8,252.85, which was deposited in his bank, and had a further credit in his account with his bank for something over one thousand dollars, made up of moneys received from other sources, much of which was received by him as proceeds of work performed in connection with material which he purchased from respondent for use in filling other contracts.

Upon the trial, it appeared that Mr. Dinsmore had purchased from respondent material which he had used in completing contracts with certain tenants of appellants, calling for special installations in the rooms to be occupied by such tenants, and the amount of the bill for the material used in this work ($613.26), which had been included in respondent's claim, was by the court deducted therefrom. Mr. Dinsmore testified that he received on account of these extra contracts $2,260, which he used in paying bills incurred by him in connection with appellants' building, including a considerable labor account.

As above stated, it appears that Mr. Dinsmore, during the period July-October, 1929, received some money from other contracts, and deposited the same in his bank account.

Appellants paid to Mr. Dinsmore money earned by him under his contract with them without making any effort to ascertain the purpose to which he was applying these funds, and without endeavoring to protect themselves from possible liens on account of material furnished on Mr. Dinsmore's order for use in their building. Respondent had complied with Rem. Comp. Stat., § 1133, in so far as appellants were concerned, by furnishing them a notice to the effect that it was supplying material for use in appellants' building. Appellants had an opportunity to protect themselves in their contract with Mr. Dinsmore by demanding from him a bond, which it appears they did, and they could also have obtained further protection by ascertaining from respondent from time to time the amount due respondent on account of material furnished for their building, and by demanding that money which they paid on account of their contract with Mr. Dinsmore be applied in payment of respondent's claim.

The equities, therefore, in this case are conflicting. Some of the money which Mr. Dinsmore deposited in his bank account, and which was applied to the payment of the trade acceptances, was derived from other contracts pursuant to which Mr. Dinsmore installed material purchased from respondent; and it is also true that six hundred dollars worth of material was furnished by respondent on Mr. Dinsmore's order, and placed in appellants' building on order of appellants' tenants under contracts upon which Mr. Dinsmore received over two thousand dollars, which he testified he paid on claims for labor also performed on appellants' building, from which payments appellants had some benefit. It also, as above stated, appears that Mr. Dinsmore had in his account July 31st a balance of almost five hundred dollars, which, with the deposits during the following four months, amounted to a considerable sum, with which appellants were no wise concerned.

Appellants cite authorities to the effect that the owner of a building situated as are appellants here is an involuntary debtor, and, under certain circumstances, is entitled to have money which he has paid to his contractor, and which the contractor has in turn paid to a dealer from whom he has purchased materials, applied in liquidation of that portion of the contractor's account with the materialman which covers supplies furnished for improvement of the particular property owned by the payor of the money. *Crane Co. v. Pacific Heat & Power Co.*, 36 Wash. 95, 78 Pac. 460; *Hughes & Co. v. Flint*, 61 Wash. 460, 112 Pac. 633. These cases were correctly decided, and we adhere to the rules therein laid down.

Appellants especially rely upon the case of *Sioux City etc. Co. v. Merten*, 174 Ia. 332, 156 N. W. 367, in which the court, in deciding a question somewhat similar to that here presented, determined that a pay-

ment made by the contractor to the materialman out of money received from the owner of a certain building then under construction, must be by the materialman credited on his account for material furnished for that particular structure. The case last cited is interesting, and, to some extent, supports appellants' contention. It does not appear, however, from the court's opinion that there existed the conflicting equities which are here presented, and we are not disposed to follow the rule laid down by the supreme court of Iowa so far as to hold that appellant should prevail on this appeal.

In the cases cited by appellants, it appears that the questions determined were simpler than those here presented, and that the equities, generally speaking, were all with the owner of the property sought to be charged with a lien. Here is presented a maze of conflicting equities and legal rights and liabilities, which the trial court resolved in favor of the lien claimant.

Appellants paid money to Mr. Dinsmore under their contract with him without reservation or any attempt to control his disposition thereof, evidently intending that he deposit the same in his bank account and exercise full control and dominion thereover. Under these circumstances, we hold that, in so far as respondent is concerned, Rem. Comp. Stat., § 2604, has no application to the facts of this case, and that the trial court did not err in establishing respondent's lien in the amount fixed by the decree.

The amount in controversy, up to and throughout the trial, was approximately $6,500. After the trial, by agreement between the parties, there was applied on this claim approximately $3,500, being the amount of the retained percentage on the Dinsmore contract remaining in appellants' possession. Under these cir-

cumstances, the allowance by the court of an attorney's fee of six hundred dollars was proper.

The decree appealed from, in so far as appellant Mary H. Murray is concerned, is reversed, and a new decree will be entered dismissing the action as to her. The new decree to be entered will establish respondent's claim as a lien against the leasehold of appellants Union Leasehold Company, a corporation, and Vance Lumber Company, a corporation, and will provide for the foreclosure of the lien and the sale of the leasehold to satisfy the same, together with costs as heretofore allowed by the trial court, according to law.

TOLMAN, C. J., MAIN, HOLCOMB, and MILLARD, JJ., concur.

