[No. 39676.    En Banc.    February 19, 1970.]

MAYNARD INVESTMENT CO., INC., *Appellant,* v. MARSHALL McCANN *et al., Respondents.*\*

\*Reported in 465 P.2d 657.

*Jerry T. Haggarty,* for appellant.

*Erik Froberg,* for respondents Legg.

*McCord, Moen, Sayre, Hall & Rolfe, John R. Martin, Jr.,* and *Charles Sayre,* for respondent The National Bank of Commerce.

*Macbride & Sax* and *D. Gordon Willhite,* for respondent Peoples National Bank of Washington.

ROSELLINI, J.—This appeal involves a question as to the rights and duties of a drawee, a payor, and a transferor of checks negotiated without the endorsement of the payees.

The plaintiff is the drawer of one of the checks in question and is assignee of the drawer of the other check, seeking recovery of the moneys represented by the checks. At the conclusion of the plaintiff's case, a challenge to the sufficiency of the evidence was sustained, findings of fact and conclusions of law were entered, and the cause dismissed. The plaintiff appeals, challenging the right of the court to enter findings and conclusions, challenging certain findings, and assigning error to the dismissal.

The plaintiff is the owner of a building in Seattle in which the "Round the Clock" restaurant is housed as a tenant. The defendant Marshall McCann is a building con-

tractor doing business as E. M. Company, who entered into a contract with the plaintiff to remodel the front of the restaurant.

The plaintiff had a cost-sharing agreement on this project with the restaurant owner, Clark's Restaurant Enterprise. The first progress estimate under the building contract was $11,345.03. In payment thereof, the plaintiff issued its check for $10,000 payable to E. M. Company, drawn on the defendant Peoples National Bank of Washington, and Clark's Restaurant issued its check for $1,345.03, payable to E. M. Company, drawn on the defendant The National Bank of Commerce. Both checks were delivered to Mr. McCann personally on September 24, 1964. On the same day, Mr. McCann delivered the checks to defendant William E. Legg, but without endorsement of any kind. Mr. Legg immediately deposited the checks in a "William E. Legg Special Account" in the Ballard Branch of The National Bank of Commerce, where the total amount was held intact until after October 9, 1964.

The funds were later transferred by Mr. Legg to the checking account of E. M. Company at the Ballard Branch of Peoples National Bank. The entire proceeds from the two checks in issue were drawn from this latter account by Mr. Legg (an authorized signatory) and used to pay creditors of E. M. Company. However, not all of these funds went to creditors on the restaurant project. As a result the plaintiff was faced with lien claims. The plaintiff received full credit on the construction contract for the amount of the two checks.

It is important to understand the relationship which existed between Mr. McCann and Mr. Legg during this time. Prior to the date of this restaurant project, Mr. McCann had bid two other jobs but did not have sufficient bonding capacity to meet the contract terms. Mr. Legg signed as guarantor on Mr. McCann's performance bonds for these two jobs. Financial difficulties arose causing the bonding company to intercede and control the application of Mr. McCann's funds. The bonding company asked Mr. Legg to

furnish funds under his guarantee and he deposited $28,000 of his money into the E. M. Company checking account at the Ballard Branch of Peoples National Bank. This account was the only business account of Mr. McCann. Upon deposit of these funds, the bonding company withdrew from its participation and Mr. Legg began to assert some control.

The bank's signature card on the E. M. Company checking account in Ballard Branch of Peoples National Bank, dated September 10, 1964, authorized Mr. Legg to draw checks thereon alone and further authorized him to endorse checks for E. M. Company.

On September 11, 1964, a meeting was held to discuss Mr. McCann's financial plight. In attendance were Mr. McCann, his accountant and his lawyer; Mr. Legg and his accountant. They were concerned, among other matters, that funds in E. M. Company account might be tied up by creditors. The William E. Legg Special Account, into which the two checks in issue were deposited, was created.

On September 16, 1964, Mr. McCann and Mr. Legg executed an agreement under the terms of which Mr. McCann assigned to Mr. Legg the net receivables from various jobs including the Round the Clock restaurant project. On October 9, 1964, this agreement was amended to "release William E. Legg from any obligation to apply any of the proceeds from the accounts and contracts receivable assigned by Marshall P. McCann to Wiliam E. Legg to the payment of any bills attributable to the job generating the funds being applied." It was after the signing of this amendatory agreement and the specific assignment of the restaurant contract moneys that Mr. Legg transferred the entire proceeds of the two checks into the E. M. Company account and then disbursed the funds to creditors of Mr. McCann.[1]

■ The plaintiff's challenge to the right of the court to enter findings of fact and conclusions of law is not well taken. Upon a challenge to the sufficiency of the evidence at the end of a plaintiff's case in a nonjury trial, the court

[1] A complete accounting of Mr. McCann's funds in the hands of Mr. Legg was rendered in a separate action. King County Civil Cause No. 637769.

may rule either as a matter of law without weighing the evidence or weigh the evidence and enter findings and conclusions based thereon. *N. Fiorito Co. v. State,* 69 Wn.2d 616, 419 P.2d 586 (1966). It is clear that the court did weigh the evidence and properly entered findings of fact and conclusions of law.

■ The findings of fact challenged by the plaintiff relate to the authority of Mr. Legg to negotiate or transfer the checks without Mr. McCann's endorsement; the understanding that Mr. Legg would create a special account in the Ballard Branch of The National Bank of Commerce; that all moneys from the two checks were transferred to the E. M. Company account in the Ballard Branch of Peoples National Bank and from there used to pay creditors of Mr. McCann; and that such disbursement was with the approval of Mr. McCann. Although Mr. McCann at one point categorically denied the authority of Mr. Legg, there is ample, substantial and independent evidence to support these findings and they will not be disturbed on appeal.

■ The gravamen of the plaintiff's position on this appeal is that the defendant banks violated their duty to it by honoring and paying checks without obtaining the endorsement of the payee. It cites 10 Am. Jur. 2d *Banks* §§ 539, 555 (1963); 5A Michie on Banks and Banking, § 181, at 448 (1950), and cases typified by *American Nat'l Bank v. First Nat'l Bank,* 130 Colo. 557, 277 P.2d 951 (1954). However, compliance with this admitted duty of a drawee bank or a paying bank may be fulfilled without the payee's endorsement. True, a bank honoring or paying a negotiable instrument without the payee's endorsement assumes the burden of proving that the payment was *in fact* authorized by the payee. As was recognized in *Coplin v. Maryland Trust Co.,* 222 Md. 119, 122, 159 A.2d 356 (1960):

> It has long been held that, despite the almost universal custom of requiring a payee to indorse a check before payment, a bank is protected if it pays without indorsement, as long as the payee actually receives the money ordered by the drawer to be paid.

There is conclusive evidence that all of the funds repre-

sented by these two checks were paid to the creditors of the payee, as the payee and transferee had agreed. The cause against the National Bank of Commerce was properly dismissed.

As to the defendants Legg, we are of the opinion that RCW 9.54.080 compels a different result. At the original hearing before a department of this court, the question of the above statute was raised sua sponte by the court. The court was informed that the issue had not been raised in the trial court and thus it was contended that it could not be considered in the Supreme Court. On rehearing en banc, the issue was argued.

■ Normally the rule is that an issue or theory not presented to the trial court will not be considered by the Supreme Court for the first time on appeal. However, this rule is not inexorable and has its limitations.

In *Morrill v. Title Guar. & Sur. Co.*, 94 Wash. 258, 162 P. 360, 163 P. 733 (1917), it was held that where the facts are before the Supreme Court, it is not necessary to remand with permission to make a permissible amendment of a cross-complaint but judgment may be given "as the justice of the case requires," under Rem. Code § 406. In *Holzer v. Rhodes*, 24 Wn.2d 184, 163 P.2d 811, 172 A.L.R. 1173 (1945), it was held that, as a general rule, questions not raised in the court below will not be considered on appeal; however, this rule does not apply when the question raised affects the right to maintain the action. In *Wright v. Corbin*, 190 Wash. 260, 67 P.2d 868 (1937), it was held that the question of illegality of the contract sued on may be raised at any time, when the fact of its illegality has been made to appear.

In 5 Am. Jur. 2d *Appeal and Error* §§ 548-49, 551 (1962), it is said:

> The ordinary rule that errors not raised below will not be considered on appeal has been treated as subject to an exception where the matter raised for the first time on appeal was of such a character as to render the judgment of the lower court void, as where the court had no jurisdiction of the subject matter. The principle that an objec-

tion not taken in the trial court is not available on appeal or review has also been held inapplicable where the record discloses a combination of gross irregularities, including the filing of pleadings in violation of rules of court, the granting of relief upon fatally defective pleadings, and the granting of relief in a second order which has already been granted in a former order.

The general rule has also been denied application where the question raised first on appeal relates to the foundation of the rights of the parties, as where the effect of the application of the rule would be to make the rights of the parties depend upon a statute which the court is judicially bound to know does not govern the case. Where a new trial is ordered, the appellate court may consider questions not technically before it which will arise on a new trial, especially where they may be decisive. Questions necessarily involved in issues raised and litigated in the trial court are open for consideration on appeal or review, even though they were not specifically raised below.

A reviewing court may consider questions raised for the first time on appeal if necessary to serve the ends of substantial justice or prevent the denial of fundamental rights. This rule is peculiarly applicable in criminal cases and especially in capital cases. So, in a case involving deprivation of life or liberty, the court will notice errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved, or the question is imperfectly presented. However, this exception will not be applied where the failure or refusal to raise the issue below was conscious and intentional, and some courts have expressly declined to recognize any such exception even in criminal cases.

Even though the matter was not raised below, the courts have frequently recognized that error may be considered for the first time on appeal where the matter in question affects the public interest. For example, the court may consider, although raised for the first time on appeal, questions as to the right of one of the parties to waive compliance with the provisions of a mandatory statute. When the question is of such a nature that the present welfare of the people at large, or a substantial portion thereof, is involved, a departure from the general rule is warranted and the court is authorized in its dis-

cretion to direct its attention to the general welfare, rather than the interests of the parties to the immediate cause.

(Footnotes omitted.)

The exception to the rule is a salutary one. Courts are created to ascertain the facts in a controversy and to determine the rights of the parties according to justice. Courts should not be confined by the issues framed or theories advanced by the parties if the parties ignore the mandate of a statute or an established precedent. A case brought before this court should be governed by the applicable law even though the attorneys representing the parties are unable or unwilling to argue it.

■ The failure to apply the funds generated by the Round the Clock restaurant project for the materials and labor furnished to the restaurant resulted in the plaintiff's property being subject to lien claims. The agreement of Mr. McCann and Mr. Legg was contrary to the statute and against the public policy of the state.

The payment of the moneys generated by the Round the Clock restaurant project to other creditors constituted a conversion, if not a crime.

RCW 9.54.080 states as follows:

Every person having entered into a contract to supply any labor or materials for the value or price of which any lien might lawfully be filed upon the property of another, who shall receive the full price or consideration thereof, or the amount of any account stated thereon, shall be deemed within the meaning of RCW 9.54.010(3), to receive the same as the agent of the party with whom such contract was made, his successor or assign, for the purpose of paying all claims for labor and materials supplied.

RCW 9.54.010 states, in part:

Every person who, with intent to deprive or defraud the owner thereof—

. . .

(3) Having any property in his possession, custody or control, as bailee, . . . or a person authorized by agreement or by competent authority to take or hold

such possession, custody or control, . . . shall secrete, withhold or appropriate the same . . . to the use of any person other than the true owner or person entitled thereto; . . .

. . .

Steals such property and shall be guilty of larceny.

■ It would appear from the record the defendant William E. Legg actually did not know of the existence of the statute. If he had known of it, it is doubtful that he would have entered into such an arrangement. Nevertheless, every person is presumed to know the law and is bound thereby, and even though his actions may not have been taken with any actual knowledge that he was misappropriating funds held in trust by him, he cannot retain the advantage he receives from violating the statute.

The purpose of the statute is to protect the owner of property which may be subject to a valid lien. *Brower Co. v. Noise Control of Seattle, Inc.*, 66 Wn.2d 204, 401 P.2d 860 (1965).

The statute is an articulation of exemplary and fundamental justice. It recognizes that moneys paid for the services of one person should not be used to pay claims of another. It demonstrates that one should not "rob Peter to pay Paul." It is intended to prevent the injustice of an owner who has paid for material and services being compelled under the lien statute to pay twice.

The fact that the plaintiff was given a bookkeeping credit on his account is immaterial. The failure to use the funds to pay claims of labor and materialmen was a violation of the statute (RCW 9.54.010)—in other words, a conversion of funds which the defendant Legg was obliged to pay out only to creditors of the plaintiff.

■ So long as any claims of the labor and materialmen were outstanding, the defendant Legg had no right to use any of the money received from the plaintiff to pay claims of others. To the extent that he did so, he converted these funds. The defendants Legg must be held liable to the plaintiff for this conversion of funds held in trust for his benefit. The plaintiff having shown that he paid the con-

tract price, the burden is properly upon the defendants to show what portion of the funds was used according to the directive of the state.

We affirm the dismissal as to the National Bank of Commerce, but remand the cause as to the defendants Legg to the trial court to ascertain the amount of money that was diverted from the plaintiff's creditors who furnished labor and materials for the construction of the Round the Clock restaurant building. The trial court is directed to enter judgment for the plaintiff accordingly.

HUNTER, C. J., FINLEY, WEAVER, and HALE, JJ., concur.

HAMILTON, J., concurs in the result.

NEILL, J. (dissenting in part)—I am in disagreement with the majority opinion regarding defendant Legg and would affirm as to all parties. My difference in view is two-fold: first, in raising the issue of the applicability of RCW 9.54.080 and, second, in the construction given that statute.

This case was tried, briefed and argued solely on the theory of the missing endorsements. During oral argument before a department of this court, a question was raised *sua sponte* from the bench as to the applicability of RCW 9.54.080. Counsel only cursorily responded. The justices in the department were not in accord as to this new theory; so a rehearing en banc was ordered. At the en banc hearing, but slight attention was paid to this issue and only counsel for respondents filed a brief on the point. The issue appears to be a matter of first impression in this state and could be of great concern to the construction and financing industries. Nevertheless this court has, on its own, raised and decided that issue without benefit of adequate briefing and full argument. Such procedure is not in keeping with our established principles.

The general rule is that an issue or theory not presented to the trial court will not be considered by this court for the first time on appeal. *Matthias v. Lehn & Fink Prods. Corp.*, 70 Wn.2d 541, 424 P.2d 284 (1967); *Ledgering v.*

*State,* 63 Wn.2d 94, 385 P.2d 522 (1963); *State ex rel. York v. Board of County Comm'rs,* 28 Wn.2d 891, 184 P.2d 577, 172 A.L.R. 1001 (1947). There are recognized exceptions to this rule, *e.g.,* matters going to jurisdiction, rights to maintain the action, illegality, invasion of constitutional rights, and lack of a claim for relief. *See Capper v. Callahan,* 39 Wn.2d 882, 887, 239 P.2d 541 (1952); *State v. Lampshire,* 74 Wn.2d 888, 447 P.2d 727 (1968); *Galvin v. State Tax Comm'n,* 56 Wn.2d 738, 355 P.2d 362 (1960).

However, we have consistently held that matters relating to the substance of plaintiff's case, whether raised by plaintiff or defendant, may not be considered for the first time on appeal even though such consideration might result in the creation or destruction of plaintiff's cause of action. *See Farrell v. Score,* 67 Wn.2d 957, 411 P.2d 146 (1966); *Magerstaedt v. Eric Co.,* 64 Wn.2d 298, 391 P.2d 533 (1964); *Pedersen v. Immanuel Lutheran Church,* 57 Wn.2d 576, 358 P.2d 549 (1961). Even when the record indicates a possible noncompliance with statutes, we have refused to consider an issue or theory not presented to the trial court. *Sims v. Horton,* 43 Wn.2d 907, 264 P.2d 879 (1953). *See also Bellevue School Dist. 405 v. Lee,* 70 Wn.2d 947, 425 P.2d 902 (1967). The reason for this view is well illustrated by the instant case. A matter of great importance to property owners, construction contractors, laborers, materialmen and financial institutions, namely, the interpretation and application of statutes on an issue of first impression, should not be raised by this court and decided without benefit of briefs and argument and without the fact finding process and prior attention of the trial court.

The cases cited by the majority do not justify its sua sponte interjection of a new theory of action into the case. *Morrill v. Title Guar. & Sur. Co.,* 94 Wash. 258, 162 P. 360, 163 P. 733 (1917), involved a purely mechanical assessment of damages under a statute. There was no attempt to change the theory of action on appeal; nor was the question of damages raised by us. Damages, in mistaken measure, had been requested at trial. *Morrill* merely stands for the

proposition that a remand is not necessary to determine damages when both the proper measure and the mandatory amount are specified by statute. It is not authority for interposing, without so much as invitation by the parties, a totally different theory than that on which the action has proceeded.

The majority also cites *Holzer v. Rhodes,* 24 Wn.2d 184, 163 P.2d 811, 172 A.L.R. 1173 (1945). There we observed that the general rule against considering on appeal questions not raised in the trial court does not apply when the question raised affects the right to maintain the action. In that appeal, it was asserted for the first time that a statutory prerequisite to an action questioning the validity of a tax sale and deed had not been fulfilled. We refused to consider that assertion, noting that the action had been brought on a different theory than that to which the statute applied. *Holzer* demonstrates a *refusal* by this court to inject into a case a different theory than that on which the parties have proceeded. A true reading of that case shows that we are willing to consider for the first time on appeal procedural prerequisites to the theory of action asserted, but are *not* willing to posit new theories of action in cases appealed to us. Thus, *Holzer* is authority against, rather than in support of, the majority rationale.

The majority also cites *Wright v. Corbin,* 190 Wash. 260, 67 P.2d 868 (1937), to the effect that, in a suit on a contract, the illegality of that contract may be raised at any time in the proceedings. This is correct as a general statement. But in its application we must bear in mind the difference between an illegal contract and a contract used illegally. As is aptly stated in *People v. Brophy,* 49 Cal. App. 2d 15, 30, 120 P.2d 946 (1942):

> The law is clear and decisive on the question of the enforceability of a contract even though one of the parties thereto has knowledge of an intended purpose of the other party, by means of the contract, or the performance thereof, to violate some law or public policy of the state. The rule in that regard is thus stated in 53 A.L.R. 1364 at page 1366:

"The rule, according to the great weight of authority, is to the effect that a contract legal in itself is not rendered unenforceable by the mere fact that one of the parties thereto has knowledge of an intended purpose of the other party thereto, by means of the contract or subject-matter thereof, to violate some law or public policy of some state; . . ."

Thus, unless the contract itself is illegal, *Wright v. Corbin* does not operate. It is my view that the assignment agreement was not in and of itself an illegal contract. It was merely the legal means by which Mr. McCann effected an illegal act. There is no support here for the majority's initiative.

To proceed then to my second objection. This court, having seen fit to reverse the trial court on a theory completely outside the record, construes RCW 9.54.080 as being applicable to the assignee, Mr. Legg. I am not convinced that such interpretation is in accord with legislative intent.[2]

The construction placed by the court on RCW 9.54.010 and 9.54.080 places the assignee of funds from a contractor under the obligation to apply those funds to lienors of the project creating the funds, to the exclusion of his own or other claims. Under such an interpretation, a financing agency could not secure loans to a contractor by an assignment of monies payable to the contractor on a construction project.

That interpretation has already been rejected by this court, at least impliedly, in *Globe Elec. Co. v. Union Leasehold Co.*, 166 Wash. 45, 6 P.2d 394 (1931). That case was an action to foreclose a materialman's lien. The owners argued that the materialman was party to a wrongful diversion by the contractor of funds paid to him by the owners. We noted that the materialman had, indeed, taken trade acceptances from the contractor for materials supplied on prior jobs, and that he knew the contractor would be likely to pay off these trade acceptances with money received from the owners on the present job. We also noted that the

---

[2] *Contract-Violation of Statute*, Annot., 55 A.L.R.2d 481 (1957), contains discussion of this issue.

owners had made no effort to protect themselves from the possibility that the contractor would misapply the funds and had paid the money to the contractor without reservation or attempt to control his disposition thereof. We affirmed the foreclosure of the materialman's lien. In that case, the facts of which are quite similar to the case now before us, we did not extend the criminal liability under the statute to those who *receive* the funds diverted. We refused to so extend the statute even though the issue was raised and argued by the parties.

The fallacy of the majority's position is in its reading of the term "agent" in the statute. It is the contractor (Mr. McCann) who is the statutory agent within RCW 9.54.080 and who is proscribed from a diversion of funds. Relating RCW 9.54.080 to the facts of this case, the statute states:

> Every person having entered into a contract to supply any labor or materials [McCann] for . . . which any lien might lawfully be filed upon the property of another [Maynard], who [McCann] shall receive the full price . . . shall be deemed within the meaning of . . . [larceny statute], to receive the same as the agent [McCann] of the party with whom such contract was made [Maynard], . . . for the purpose of paying all claims for labor and materials supplied.

The trial court found, and plaintiff affirms, that Mr. Legg had no business dealings whatsoever with the owners. Obviously, then, Mr. Legg was not a person who had "entered into a contract to supply labor and materials" and is not the statutory agent to whom the proscription is addressed.

Neither the fact that Mr. McCann may have violated the statute (*see State v. Williams*, 141 Wash. 148, 251 P. 155 (1926)), nor the fact that a purpose of the statute is protection of the owner requires the extension of liability to those dealing with him. *See* discussion in Annot., 55 A.L.R.2d 481 (1957); *Brower Co. v. Noise Control of Seattle, Inc.*, 66 Wn.2d 204, 401 P.2d 860 (1965). The criminal liability imposed by the statute extends to those enumerated in its terms and no others. Mr. Legg is not a person so enumerated.

630

Accordingly, I dissent from that portion of the majority opinion which injects the applicability of RCW 9.54.080 and applies that statute to Mr. Legg. I would affirm as to all parties.

DONWORTH, J. Pro Tem., concurs with NEILL, J.

April 24, 1970. Petition for rehearing denied.

