[No. 37731.    Department Two.    June 23, 1966.]

HELEN HILYARD MILLS, *as Executrix, Appellant,* v. INTER ISLAND TELEPHONE CO., INC., *Respondent.**

*Reported in 416 P.2d 115.

*Paul H. Graves* and *Olson & Johnson,* for appellant.

*Burton A. Kingsbury* (of *Livesey, Kingsbury & Livesey*), for respondent.

DONWORTH, J.—This is an appeal from a dismissal of appellant's action after a hearing on a motion for summary judgment made by respondent, Inter Island Telephone Company, Inc. Appellant, Helen Hilyard Mills, as executrix of her husband's estate, also made a motion for partial summary judgment which concerned different issues from those passed on by the trial court in dismissing appellant's action on respondent's motion for summary judgment.

William George Mills died on May 29, 1956, when the small airplane in which he was riding became entangled in power and telephone wires as it approached the Orcas Island airfield known as East Sound Airport. His widow, as executrix of his estate, commenced this action against both Orcas Power & Light Company and Inter Island Telephone Company, Inc., to recover damages for his wrongful death and also to recover on an assigned claim for the destruction of the airplane. The airplane was owned by W. G. Mills Company, Inc., which company, for practical purposes, was wholly owned by the decedent.

This case has previously been before this court on an appeal from a judgment of dismissal based on the sustaining of the defendant companies' demurrers to the second amended complaint. We reversed that judgment and remanded the case for further proceedings. See *Mills v. Orcas Power & Light Co.,* 56 Wn.2d 807, 355 P.2d 781 (1960).

After the remand of the case, the defendant companies filed answers. Respondent's answer admitted the occurrence of the fatal accident and the existence of its poles and wires at the scene of the accident, but denied the allegations of the second amended complaint on which liability for the death of Mr. Mills and the destruction of the plane was predicated. This answer also contained six affirmative

defenses, two of which alleged contributory negligence of the operator of the plane.

Before the case was brought to trial, settlement negotiations between Mrs. Mills, as executrix, and Orcas Power & Light Company, one of the defendants, resulted in payments by Orcas Power & Light Company of $8,500 to Hansen & Rowland, Inc., as agent of the insurance underwriters of the airplane,[1] $6,374 to William George Mills, Jr., and $6,375 to the guardian of Lynda Lou Mills, a minor. William George, Jr., and Lynda Lou Mills are the children of Mr. Mills by a previous marriage and the stepchildren of Mrs. Mills. It should be noted that Mrs. Mills received no payment in connection with this transaction.

In consideration of these payments, the respective parties who received the payments above specified each executed a separate document with Orcas Power & Light Company which was specifically characterized by the parties as a covenant not to sue. The document signed by Hansen & Rowland, Inc., was also signed by Mrs. Mills, acting as executrix of her husband's estate. Mrs. Mills did not sign either of the other two documents, one of which was signed by William George Mills, Jr., and the other by the guardian of Lynda Lou Mills. Lynda Lou Mills' document was signed by her guardian in her behalf only after he had received probate court approval of the settlement.

Counsel for both parties have argued strongly concerning the legal effect of the participation of Mrs. Mills, as executrix, in the settlement arrangements. The record shows that court approval of the settlement in favor of

---

[1] The aircraft was insured through Hansen & Rowland, Inc., with the Syndicate of Underwriters at Lloyd's of London, commonly known as Lloyd's Underwriters or Lloyd's of London. The insurance policy covering property damage indemnity included a right to subrogation by the underwriters of any cause of action by the aircraft owner against third persons, in this case the defendants in this action. Hansen & Rowland, Inc., had authorized Mrs. Mills to sue in behalf of Lloyd's Underwriters at the same time as she sued as executrix of her husband's estate in the wrongful death action. Lloyd's Underwriters had paid the full value of the aircraft, $17,000 to W. G. Mills Company, Inc., the owner of the aircraft.

Lynda Lou Mills occurred following a petition presented jointly to the Superior Court for Spokane County by Mrs. Mills, as executrix of her husband's estate, and by the guardian of the estate of Lynda Lou Mills. The petition was captioned to show it was entered in both the probate proceeding and the guardianship proceeding.

The petition stated the circumstances of the accident in which Mr. Mills was killed, and the pending suit against the two utilities which were named as defendants. It recited the request of William George Mills, Jr., and of the guardian of Lynda Lou Mills for approval of the settlement. It recited that Mrs. Mills was taking nothing by the settlement, but that she was willing, as executrix, to approve the compromise of her stepchildren's claims in spite of the fact that no compensation was being received by her. She stated that she believed it important that she, as executrix, agree to the dismissal of the suit against Orcas Power & Light Company, in order to fulfill the obligation to the agent of the insurer of the airplane and to facilitate the desires of William George Mills, Jr., and of the guardian of Lynda Lou Mills to consummate such proposed settlement. She recognized that, by executing a document agreeing to dismiss Orcas Power & Light Company, she might be precluded from recovery on her own claim against Inter Island Telephone Company, Inc., although it was not her intention to release that defendant as to her own claim, and she believed that such a result would be unjust. Mrs. Mills asked the probate court for instructions as to her duties as executrix in this situation.

The Superior Court for Spokane County entered findings of fact, conclusions of law, and an order which were entered in both the probate proceeding and the guardianship proceeding of the minor, Lynda Lou Mills. The order itself did not specifically direct Mrs. Mills to do anything with regard to the proposed settlement. The court entered finding of fact No. 3, which stated that:

> The petitioner, Helen Hilyard Mills, has withdrawn her claim against Orcas Power & Light and is content to look solely to Inter Island Telephone Company for the

damages which she sustained by virtue of the death of her said husband, William George Mills.

The court order directed the guardian of Lynda Lou Mills to accept the settlement on behalf of his ward. The court was aware that such settlement could not be consummated without the co-operation of Mrs. Mills as executrix of her husband's estate because, under RCW 4.20.010, the cause of action for wrongful death was vested solely in the executrix. *Hansen v. Stimson Mill Co.*, 195 Wash. 621, 81 P.2d 855 (1938).

We infer that the superior court believed that, in so far as the claim of Lynda Lou Mills was concerned, the executrix should concur in the settlement of that part of the suit with Orcas Power & Light Company. However, the superior court gave the executrix no instructions as to whether or not to compromise her own claim without compensation. It is clear that the superior court, acting as probate court, approved only the settlement of the minor daughter's claim for the protection of the executrix and the guardian.

The children of Mr. Mills were expressly mentioned in the executrix' complaint against both utilities as beneficial plaintiffs. The prayer of the second amended complaint is as follows:

> Wherefore, plaintiff prays that on her first cause of action she recover the sum of $250,000 for the damages which she has sustained through the death of said William George Mills and that she further be entitled to recover the sum of $15,000 for the damages which his son William George Mills, Jr. has sustained, and the further sum of $35,000 for the damages which his daughter Lynda Lou Mills has sustained, and that she further recover the sum of $17,000 on her third cause of action and that she have her expenses and costs incurred herein.

We conclude, from a reading of this complaint, that the suit was brought by the executrix under RCW 4.20.010 and 020 for the benefit of herself and her two stepchildren.

The complaint also sought recovery for damages to the airplane (alleged to be a total loss) in the amount of $17,000

based on the assigned subrogation right of the insurer's agent, Hansen & Rowland, Inc., and the right of the corporate owner of the aircraft to sue for the damages to any property belonging to it. As above stated, each of the decedent's children and the insurer's agent agreed to the dismissal of the suit against Orcas Power & Light Company brought by Mrs. Mills as executrix of Mr. Mills' estate.

The three documents executed by the above-named parties and delivered to Orcas Power & Light Company contained essentially the same language. The document signed by Hansen & Rowland, Inc., and by Mrs. Mills, as executrix of her husband's estate, reads as follows:

> In consideration of the payment of the sum of Eight Thousand Five Hundred Dollars ($8,500.00) to Hanson & Rowland, Inc., as agents of that syndicate of Underwriters at Lloyd's, London signatory to Aviation Insurance Certificate No. AW 5264, Helen Hilyard Mills, as Executrix of the estate of William George Mills, deceased, and that syndicate of Underwriters at Lloyd's, London signatory to Aviation Insurance Certificate No. AW 5264, through their agents, Hanson & Rowland, Inc., do hereby covenant and agree with Orcas Power and Light Company, its successors, and assigns, that they and each of them will never, by reason of any matter, cause or thing whatsoever heretofore occurring, institute suit or action, at law or otherwise, against it or institute, prosecute or in any way aid in the prosecution of any claim, demand, action or cause of action for damages, costs, loss of service, expenses or compensation for or on account of any damage, loss or injury either to person or property or both, whether developed or undeveloped, resulting to or to result, known or unknown, which they or any of them, their successors and assigns hereafter can, shall or may have. The undersigned expressly reserve all rights of action, claims and demands against any and all other persons whomsoever not herein named.
>
> Helen Hilyard Mills, as executrix of the estate of William George Mills, further agrees to dismiss that certain cause of action now pending in the Superior Court of the State of Washington for San Juan County, entitled: "Helen Hilyard Mills, as Executrix of the Estate of William George Mills, deceased, Plaintiff, vs. Orcas Power & Light Company and Inter Island Telephone Co., Inc.,

Defendants", only as to Orcas Power and Light Company and agrees not to further prosecute as to it, reserving the right to further prosecute this action against the defendant Inter Island Telephone Company, Inc.

Consistent with her agreement to do so, Mrs. Mills, as executrix of her husband's estate, entered into a stipulation of dismissal with Orcas Power & Light Company, wherein she consented to the dismissal of the action as to that defendant, but expressly reserved the cause of action against Inter Island Telephone Company.

After the dismissal of Orcas Power & Light Company, pursuant to the stipulation, Mrs. Mills, acting as plaintiff in the case, moved for partial summary judgment on the issue of the negligence of Inter Island Telephone Company, Inc., being the proximate cause of her husband's death. Her motion was supported by affidavits as to the facts of the case. That defendant (respondent) filed affidavits opposing this motion, and also filed a motion for summary judgment dismissing the action of the executrix on the ground that the documents executed by her and the other parties referred to above were, in effect, releases of liability, and that the release of defendant Orcas Power & Light Company from liability also released defendant Inter Island Telephone Company, Inc., because the two utility companies were "joint tort feasors."

The trial court heard respondent's summary judgment motion of dismissal before it heard appellant's motion for partial summary judgment. After hearing arguments on both motions, the trial court took the matter under advisement, and shortly thereafter granted respondent's motion for dismissal of the action and filed a memorandum opinion stating the reasons for its decision.

Thereafter, Mrs. Mills, as executrix, appealed from the trial court's dismissal of the action on respondent's motion for summary judgment. She has also asked this court to pass on her motion for partial summary judgment on the ground that the issues involved present purely questions of law.

Appellant has assigned as error the trial court's construction of the document signed by Mrs. Mills as being a release rather than as a covenant not to sue. Appellant points to the undisputed fact that she, individually, has received no compensation whatever for her claim. She then argues that the only justifiable reason for continuing to apply the rule that a release of one joint tort-feasor from liability releases all other joint tort-feasors is to prevent double recovery on a tort claim. It is contended that, since there is no double recovery in this case, there is no reason why the distinctions between a covenant not to sue and a release should not be applied to protect Mrs. Mills' personal claim from dismissal against a tort-feasor who seeks to benefit from the settlement arrangements made between the other alleged tort-feasor and the beneficial claimants other than Mrs. Mills. We agree with this position of appellant.

It is important to recognize that the rule that a release of one joint tort-feasor releases all other joint tort-feasors is an old common-law rule which has long been criticized by leading legal experts[2] because of its unjust results in many cases if applied mechanically. Most jurisdictions have recognized that, when parties have intended to enter into a covenant not to sue rather than a release, and the plaintiff has not received compensation for his claim, courts should avoid the harshness of the common-law rule when the remaining joint tort-feasors are not harmed thereby. 2 Williston, Contracts § 338a, pp. 714-725 (3d ed., Jaeger 1959), especially 720, 721.

The simple precaution (used by most well advised plaintiffs) of drafting the above quoted document, which appears on its face to be in all respects a covenant not to sue, has been used by appellant in this case. The question we must ask is whether in this case there is some reason why it should not be construed as a covenant not to sue.

In some circumstances, it may be possible for a plaintiff to use the covenant not to sue as a device for obtaining a

[2]Prosser, Torts § 46, pp. 268-273 (3d ed., 1964); 1 Williston, Contracts § 338a, pp. 646-648 (1st ed., 1920); *Black v. Martin*, 88 Mont. 256, at 267-269, 292 Pac. 577, at 580-581 (1930).

double recovery, or for allowing a plaintiff to bargain his way to a much better settlement than he deserves by dividing his jointly-sued defendants by appealing to the self-interest of each and thus settling with first one and then the other. Suits based on doubtful claims are particularly susceptible to this approach. This reason accounts for what may seem to have been a reluctance of this court to accept the clear intent of the parties to such a document in deciding whether a document which appears on its face to be a covenant not to sue operates as a release. See *Haney v. Cheatham,* 8 Wn.2d 310, 111 P.2d 1003 (1941) at 322, wherein this court stated:

> The rule is that, even if the writing be appropriately drawn to make it a covenant not to sue, the court, nevertheless, must construe it in the light of the facts and circumstances surrounding its execution to ascertain whether it was, in substance and effect, given for a consideration which is reasonably compensatory. The settlement for one thousand dollars is conceded. Whether this was adequate, is dependent upon whether the appellant could prove the negligence of Cheatham, the extent of appellant's injuries, his medical expenses, and the extent of his pain and suffering. Obviously, the jury deemed the amount adequate for the injuries sustained by appellant. The first verdict, which was not accepted, denied to Haney any compensation for damage to his car and awarded him only one dollar for personal injuries.

On the other hand, if this court were to fail to recognize that a covenant not to sue does not release a joint tort-feasor when a plaintiff has not received any compensation from the codefendant who is a party to the settlement agreement, we would make it impossible to partially settle lawsuits against jointly-sued defendants when the complaint is based on an alleged tort, even though no one intends that the remaining defendants be released from liability, *and no injustice results to the remaining defendants if they are not released.* The possibility of discouraging settlements and forcing such cases to trial is at least as undesirable as the possibility of double recovery to a plaintiff. Especially is this true when the problem of

double recovery is really more an illusion than a reality because any settlement received by the plaintiff must be credited against any judgment which results from a subsequent trial of the lawsuit against the remaining tort-feasor(s), provided that the defendant(s) subject to the payment of the judgment bring to the attention of the trial court the fact of such prior payment. See Prosser, *op. cit., supra,* p. 270, footnote 7, and p. 272, footnote 31.

. The prior decisions of this court, in our opinion, not only do not require the result arrived at by the trial court in this case, but actually call for the opposite result when the *facts* of those cases are read as well as the rules of law which were held applicable to the particular facts of each case. The correct rule adopted by this court is that the distinction between a covenant not to sue and a release will be preserved according to the intention of the parties, unless the document is operative as a release because (1) a reasonably compensatory consideration has been paid by a codefendant (2) for the alleged tort (3) to (for the benefit of) the party plaintiff who gives the covenant not to sue. That is the explanation of *Haney v. Cheatham, supra,* quoted above.

The other modern cases relied on by the trial court are similar in the character to the litigation dismissed by the courts. *Sideris v. Northwest Bonded Escrows, Inc.,* 51 Wn.2d 851, 322 P.2d 349 (1958), was dismissed by the trial court on its merits, in the sense that the plaintiff in that case was suing the codefendant real-estate broker for a return of real-estate commissions paid out of an escrow deposit prior to the rescission of a sale on the grounds (1) that the broker had knowingly made misrepresentations, and (2) that the commissions were unearned because the sale was rescinded. The trial court found that the cause of the rescission was the misrepresentations authorized by the codefendant who was released from liability after all the balance of the escrow deposit had been returned to the plaintiff-purchaser. It also found that the broker had earned the commissions.

*Getzendaner v. United Pac. Ins. Co.,* 52 Wn.2d 61, 322 P.2d 1089 (1958), is a much more intricate case, involving four separate alleged causes of action which were all based on an improper use and destruction of real and personal property of the plaintiff by the codefendants. The only issue concerning "release" of joint tort-feasor arose in connection with the first cause of action which was based on a "use or occupancy" damages claim by plaintiff, which was settled with one joint tort-feasor for $1,200 for past damage and $100 per month for as long as the damaging use was to continue. The trial court dismissed the first cause of action on the theory that a release of one joint tort-feasor released all other joint tort-feasors. Another cause of action was dismissed for failure of proof. When the other two causes of action were finally submitted to the jury, the verdict which resulted was favorable to all defendants on all claims presented.

The similarity of the rationale of the *Haney* case, *supra,* the *Sideris* case, *supra,* and the *Getzendaner* case, *supra,* is clear. The rule applicable to those cases is that a release of one joint tort-feasor is a release of all joint tort-feasors regardless of the fact that the plaintiffs tried to include in the agreement a reservation of their causes of action against the other codefendants because the plaintiffs had each received a reasonably compensatory consideration for their tort claims, and the court was not willing to measure the amount of the settlement against what might be recovered in each instance if the questions of liability and damages were litigated.

In the present case, Mrs. Mills, as one of the beneficial plaintiffs, received nothing. As executrix, she had no choice as to whether she would receive anything. By agreement with Hansen & Rowland, Inc., agent of the insurer of the airplane, Mrs. Mills was acting as a fiduciary for that company, and she was acting as fiduciary for the stepchildren, who also were each beneficial plaintiffs. Their claims were entirely under her control as executrix of their father's estate. See RCW 4.20.010 and 020. Thus, Mrs. Mills, under the same statute, was also acting, in a sense,

as a fiduciary as to her own claim. She could not sue as widow, but only as executrix. *Reutenik v. Gibson Packing Co.,* 132 Wash. 108, 231 Pac. 773, 37 A.L.R. 830 (1924).

Mrs. Mills was named as sole plaintiff in the caption of the complaint only because the statute under which the suit must be brought authorizes a single suit for wrongful death which must be instituted in the name of the executor for the benefit of the widow and children in order to facilitate the handling of their claims for such loss. *In re Perrigo's Estate,* 47 Wn.2d 232, 287 P.2d 137 (1955). This statutory procedure also benefits defendants who could otherwise be compelled to defend against a multiplicity of suits instituted by various plaintiffs at various times involving the same cause of action.

Mrs. Mills recognized that her fiduciary responsibilities must come first, and in this case she acted in the only appropriate way available to her in these circumstances, by allowing these other beneficial claimants to receive settlements from one joint tort-feasor who would not have consummated these settlements unless she signed a covenant not to sue, because she alone had authority to dismiss the action. *Hansen v. Stimson Mill Co.,* 195 Wash. 621, 81 P.2d 855.

The trial court seemed to feel that the amounts which were paid to the two children, which totalled $12,750, also constituted compensation to Mrs. Mills for her own claim. These funds could be attributed to Mrs. Mills *only* in her capacity as fiduciary for the children in this suit.

The trial court, in its decision, referred to this amount ($12,750) as compensation for *the claim* "keeping in mind the always present possibility of failure to prove liability" of the alleged tort-feasors. If the trial court had been referring only to the amounts claimed in the complaint on behalf of the children ($50,000), we might agree. But the trial court was comparing this amount with the total damages ($300,000) for which a tort-feasor might be found liable to *all* the beneficiaries of the cause of action given by RCW 4.20.010 and 020.

The second amended complaint sets out specific amounts for which each beneficial plaintiff is presenting a claim. See the prayer of the complaint, which is quoted above. In determining who has received a benefit from a settlement, we must look to who actually received the compensation, not the name of the nominal plaintiff. The trial court's comparison of value of the compensation received with the total amount prayed for entirely disregarded the three separate amounts claimed by the three beneficial plaintiffs. The court overlooked the fact that Mrs. Mills had a claim for $250,000, for which she received nothing. Since she received nothing on her personal claim, there is absolutely no danger or possibility of double recovery as to her in this particular case as was argued before the trial court and on appeal in support of this motion for summary judgment. In view of this undisputed fact, we see no reason for holding that the agreement which she signed operated as a release instead of a covenant not to sue. Consequently, it is our opinion that the trial court erred in granting respondent's motion for summary judgment.

Appellant's assignment of error No. 4 is that the trial court erred in not granting appellant's motion for partial summary judgment. Appellant had moved for summary judgment on two issues. It asked the trial court to find, as a matter of law, that (1) respondent was negligent in failing to mark its poles and wires so that they were clearly visible to pilots approaching the airfield for a landing, and (2) that respondent's negligence was the proximate cause of the death of William George Mills. The trial court did not reach these issues, but it did hear argument on the motion, and would have passed upon them if it had not dismissed the case on respondent's motion to dismiss.

With regard to these issues, the affidavits in support of and in opposition thereto are in conflict. Affidavits supporting appellant's motion for partial summary judgment aver that it was very difficult for pilots approaching the airport from the south to see the poles and lines. Affidavits supporting respondent's position aver that the poles and lines could be easily seen by them from a considerable dis-

tance. The affidavits in support of appellant's position also state that Technical Standard Order N18 (hereinafter referred to as TSO N18), issued by the United States Department of Commerce and the Civil Aeronautics Administration,[3] expresses the standard obstruction marking and lighting precautions which are accepted and followed by all persons who may maintain structures that may be hazardous to flying aircraft.

Affidavits in support of respondent's position aver that TSO N18 is not accepted by the aeronautics industry with regard to small airports, and that it is not the generally accepted standard of the industry.

In our opinion, the affidavits clearly show that these are vital factual issues which should be resolved by a trial. It is a very basic rule in this jurisdiction that, if there is presented a question of material fact, summary judgment cannot be granted. *Preston v. Duncan*, 55 Wn.2d 678, 349 P.2d 605 (1960).

We are concerned that the parties and the trial court may misunderstand our decision in this case by reading too much into the statements we have made, and may infer too much because of our refraining from discussing all of the arguments made by the parties. We think it is important that the parties and the trial court recognize that even if the industry has not accepted TSO N18 or used it, the issue of negligence is not to be determined *simply* and *solely* by a reference to what is commonly done in the industry. It is possible that the entire industry has been negligent in its practices. See *The T. J. Hooper*, 60 F.2d 737 (2d Cir. 1932); Prosser, *op. cit., supra,* § 32, p 136. Especially, this may be true if the cost and ease of precautions that may be taken are weighed against the severity of the risk to be guarded against. See Prosser, *op. cit., supra,* § 30, p 122. The ultimate factual questions for determination which are left

[3]The order was issued April 26, 1950, prior to the time the Civil Aeronautics Administration was replaced by the Federal Aviation Agency. The manual published pursuant to this order was published November 1, 1953, and was for sale to the general public for 30 cents per copy.

unresolved by the affidavits before this court are (1) would a reasonably prudent person have marked these poles and wires in view of their location and the other circumstances in the case, and (2) if so, was respondent's failure to do so *the* proximate cause of the accident?

■ Appellant has argued that in, *Mills v. Orcas Power & Light Co.*, 56 Wn.2d 807, 355 P.2d 781, this court held that the defendants were negligent as a matter of law, and (1) that this ruling has become the law of the case, and (2) that, in any event, the determination was correct and should be followed.

The issue before the court in that case was whether the second amended complaint had stated a cause of action when tested by demurrer. In such a situation, the rule was that the truth of every fact well pleaded by in the complaint was assumed by the court to be true. *Trumble v. Wasmer*, 43 Wn.2d 592, 262 P.2d 538 (1953).

Our former decision in this case was rendered prior to the time that demurrers were abolished by Rule of Pleading, Practice and Procedure 7(c). All that was held in that decision was that the allegations of the second amended complaint, when assumed to be correct, stated a cause of action.

In the present posture of the case, that opinion is of no controlling effect. The case is now at issue, since respondent has filed its answer denying liability and setting up various affirmative defenses. As above stated, these material factual issues can be resolved only by a trial on the merits.

The judgment of the trial court is reversed, and the case remanded to the trial court for trial to be conducted consistently with the views expressed in this opinion. Costs of this appeal will abide the result of the trial as provided in Rule on Appeal 55(b)(1).

ROSELLINI, C. J., FINLEY and HAMILTON, JJ., and LANGSDORF, J. Pro Tem., concur.