[No. 280-2.    Division Two.    August 16, 1971.]

CHRISTINA A. LITTS *et al., Appellants,* v. PIERCE COUNTY,
*Respondent.*

*Edwin J. Wheeler* (of *Witt, Hutchins, Plumb & Wheeler*), for appellants.

*Roy Moceri* and *William R. Hickman* (of *Reed, McClure, Moceri & Thonn*), for respondent.

PETRIE, C.J.—Plaintiffs appeal from a summary judgment dismissing their complaint against Pierce County.

The operative facts are that Christina Litts suffered severely disabling injuries in a 2-car accident at the intersection of two roads maintained by Pierce County. She (through her guardian) and her parents sued Guy Ramirez, the driver of the vehicle in which she was riding as a passenger. Subsequently, upon the receipt of $15,000 from her driver's liability carrier, she (through her guardian) and her parents executed an instrument entitled "Settlement Agreement and Covenant Not to Proceed Further", the pertinent portions of which declare:

> The undersigned, of full lawful age, hereby acknowledge receipt from Guy and Karen L. Ramirez, husband and wife, and Hawaiian Insurance & Guaranty Company, Ltd., of the sum of Fifteen Thousand Dollars ($15,000.00) this date, which sum the undersigned acknowledge to be the consideration for a *full surrender of the cause of action* set forth against Guy and Karen L. Ramirez in the aforesaid Complaint for Damages, growing out of bodily injury and of property damage sustained by Christina A. Litts as a result of an accident which occurred at or near the intersection of Military Road and Gus G. Bresemann Boulevard in Pierce County, Washington, on or about the 18th day of April, 1969, for which bodily injury and property damage the undersigned claimed Guy Ramirez and Karen L. Ramirez, his wife to be liable, which liabil-

ity is expressly denied; and, in consideration of the sum paid, the undersigned promises to petition for dismissal of the said Complaint with prejudice, and *to release and forever discharge* the said Guy Ramirez and Karen L. Ramirez and Hawaiian Insurance & Guaranty Company, Ltd., their heirs, successors, administrators, and assigns, from any and all actions, causes of action, liability, claims and demands upon or by reason of any damages, loss, injury or suffering, known and unknown direct and indirect, which has been or may hereafter be sustained by the undersigned in consequence of such accident and injury.

(Italics ours.)

During the course of the foregoing negotiations, the same parties plaintiff filed a complaint against Pierce County alleging that Christina's injuries resulted from the negligent acts and omissions of the county.

After filing an answer, Pierce County also filed a motion to dismiss based upon the contention that plaintiffs, having released Mr. Ramirez, had also released the other alleged "joint tort-feasor." The trial court granted defendant's motion and this appeal followed.

The applicable rule was clearly enunciated in *J. E. Pinkham Lumber Co. v. Woodland State Bank,* 156 Wash. 117, 123, 286 P. 95 (1930):

The question has been before us in practically all of its phases, and we have with unanimity held that *a release of one joint tort feasor is a release of all,* whether the release be partial or in full, whether the amount of the recovery be unliquidated or measured, and whether the release to the one be with the express reservation that it shall not apply to the others.

(Italics ours.)

The issues then are (1) whether or not the settlement document constitutes a "release" of Mr. Ramirez, the driver of the vehicle in which Miss Litts was riding; and (2) whether or not Mr. Ramirez and Pierce County were joint tort-feasors under the allegations and documents of record.

The first issue is easily disposed of. A release is a surrender of a claim, which may be given for less than full

consideration, even gratuitously. *DeNike v. Mowery*, 69 Wn.2d 357, 418 P.2d 1010 (1966). The technical distinction between a covenant not-to-sue and a release was cogently stated in *Haney v. Cheatham*, 8 Wn.2d 310, 316, 111 P.2d 1003 (1941):

> [I]t is a covenant not to sue if it gives to the joint tort-feasor in return for the payment made by him nothing more than a right of action against the covenantor in the event of the breach of that agreement by the institution of an action; but it is a release if it may be pleaded as a defense to defeat the action brought by the covenantor.

The rule is that the distinction between a covenant not-to-sue and a release will be preserved according to the intention of the parties unless the document is operative as a release. *Mills v. Inter Island Tel. Co.*, 68 Wn.2d 820, 416 P.2d 115 (1966). In the present case, we do not reach the question of the instrument's operative effect as distinguished from the instrument per se because the plain language employed in the instrument is that of a release. Indeed, it would be difficult to draft a document which more explicitly released Mr. Ramirez. The parties plaintiff acknowledged the payment of $15,000 "to be the consideration for a full surrender of the cause of action set forth", and did further promise

> to release and forever discharge the said Guy Ramirez and Karen L. Ramirez and Hawaiian Insurance & Guaranty Company, Ltd., . . . from any and all actions . . . known and unknown direct and indirect, which has been or may hereafter be sustained by the undersigned in consequence of such accident and injury.

Clearly, the parties plaintiff did release Mr. Ramirez to the extent that the instrument on its face establishes that it may be pleaded as a defense to defeat any possible future action against him brought by those parties and arising out of that accident.

As to the second issue, the precise definition of a joint tort-feasor has not yet reached a completely stabilized status in this jurisdiction. On the one hand, our attention is

directed to *Young v. Dille,* 127 Wash. 398, 404, 220 P. 782 (1923) in which the court declared: "To be joint tort-feasors, the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a single injury." On the other hand, we are directed to the recent definition in *White Pass Co. v. St. John,* 71 Wn.2d 156, 158, 427 P.2d 398 (1967): "To be a joint tort-feasor, the respondent must have acted in concert with its subcontractor in producing the damage."

■ Still further, in recent years this jurisdiction appears to have begun a segregation of the several classifications of multiple tort-feasors into successive, concurrent, and joint, for some purposes, even though in the past, all have been sometimes intermingled under the general term of joint tort-feasor. In *DeNike v. Mowery, supra,* a distinction was clearly drawn between an original wrongdoer and a succeeding treating physician. Explaining this distinction, the court declared at page 368:

> This confusion in Washington and other American jurisdictions apparently arose because the treating physician and the original tort-feasor could be *joined* together as defendants in one cause of action; but the original wrongdoer and the treating physician are obviously not joint tort-feasors in the sense that they acted in concert; nor are they concurrent tort-feasors in the sense that the fault of either could have caused the whole harm suffered by the injured party.

The precise name given to the multiple tort-feasors, of course, is not important. Nor does it serve any useful purpose to declare the nature of the legal obligation in general terms such as several, joint, or joint and several, unless there is a clear and unmistakable understanding of the precise obligations which flow from such generalities.

In the past, when the negligence of one person has concurred with that of another to produce the proximate cause of injury to a third person, the first two have sometimes been referred to as joint tort-feasors, and the liability of such tort-feasors has sometimes been categorized as joint; *Abb v. Northern Pac. Ry.,* 28 Wash. 428, 68 P. 954 (1902); and in other cases such liability has been categorized as

joint and several; *Thornton v. Eneroth,* 177 Wash. 1, 30 P.2d 951 (1934); and in still others, such defendants have been held liable "jointly or severally"; *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 P. 9 (1917). Under the terminology currently existing in this jurisdiction, as exemplified by *White Pass* and *DeNike,* the appellation "joint tort-feassors" should be purified and reserved for those who have acted in concert;[1] and, for the sake of clarity, tort-feasors whose independent acts of negligence have concurred to produce the proximate cause of injury to a third person should be regarded merely as "concurrent tort-feassors." Under such a definition of terms, clearly, and admittedly, Ramirez and Pierce County, in the case at bar, were "concurrent tort-feasors", and not "joint tort-feasors".

A simple resolution to the issue presented by this appeal is therefore a declaration that the rule enunciated in *Pinkham,* being restricted to joint tort-feasors, does not apply to the case at bar. However, we deem it necessary to declare that the release of one concurrent tort-feasor may, but need not necessarily, release the other wrongdoer, and explain our reasons for such a rule. We note, preliminarily, that in the case of successive tort-feasors, release of the original wrongdoer does not necessarily release the successive wrongdoer. *DeNike v. Mowery, supra.* It would seem, a fortiori, that such a rule should also apply to a concurrent wrongdoer.

██ We must consider, also, some existing indicia of the liability heretofore clearly imposed upon concurrent tort-feasors, regardless of what title may previously have been assigned thereto. We start with the premise that when their negligent acts concur to produce the proximate cause of injury each is liable as if solely responsible for the

---

[1] We note that in California to constitute the parties joint tort-feasors, the following three elements must all exist: "(1) A concert of action; (2) A unity of purpose or design; (3) Two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others." *Alexander v. Hammarberg,* 103 Cal. App. 2d 872, 230 P.2d 399 (1951) quoting from *Weinberg Co. v. Bixby,* 185 Cal. 87, 106-07, 196 P. 25 (1921), *rehearing denied,* March 14, 1921.

injury caused by the concurrent acts of negligence. *Caylor v. B. C. Motor Transp., Ltd.*, 191 Wash. 365, 71 P.2d 162 (1937); *Bell v. McMurray*, 5 Wn. App. 207, 486 P.2d 1105 (1971). We do not, by this opinion, in any manner detract from the efficacy of that general rule. Rather, we note that the rule arises because of the solidary[2] nature of the liability imposed upon those concurrent tort-feasors whose negligent acts concur to produce the proximate cause of injury to a third person.

We adhere to the generally accepted rule that the obligations imposed upon multiple tort-feasors whose negligent acts merely concur to produce the proximate cause of injury is a solidary obligation usually categorized as point and several. By the use of that term, however, we mean merely that such obligation assumes in part the nature of joint liability and in part the nature of several liability, and that its precise nature lies somewhere between the extremes of several liability and joint liability. *See* P. Fitzgerald, Salmond on Jurisprudence, § 122, at 448 (12th ed. 1966).

Perhaps the most significant distinction between joint liability and several liability is that in the former there is in reality only one cause of action, where as in the latter there are as many causes of action as there are debtors. Because there is, under a joint liability, only one cause of action, the chief effect thereof is that when that which ties them together is loosed, it is loosed as to all of them. That is what is really meant when the court has said that a release of one "joint" tort-feasor is a release of all. On the other hand, as to those bound together by a solidary obligation described as "several", *satisfaction* is necessary to release the others, simply because of this same distinction. When the amount of the obligation is the full amount of the injury, the satisfaction required is also the full amount of the injury. *DeNike v. Mowery, supra.*

---

[2]For a contrary rule where the liability is considered to be *not* solidary in nature, *see Snavely v. Goldendale*, 10 Wn.2d 453, 117 P.2d 221 (1941); *Maas v. Perkins*, 42 Wn.2d 38, 253 P.2d 427 (1953); *Smith v. Rodene*, 69 Wn.2d 482, 418 P.2d 741 (1966); Restatement (Second) of Torts § 433A (1965).

■ Insofar as the solidary obligation of concurrent tort-feasors is effected by a release, we hold that it is related to the several aspect of the joint and several liability. Thus, when the release of one constitutes satisfaction of the obligation it releases all the others. Clearly the creditor cannot recover more than the full amount of the obligation owed. Thus, to the extent that the release does not satisfy the full obligation, the others are not released. Put another way, the release of one concurrent tort-feasor releases the others pro tanto. What we have said about the nature of the obligation does not, however, prevent an injured party from intending that a release of one tort-feasor shall release others, regardless of the nature of such obligation.

Finally, therefore, we adopt the rule that a release by an injured party of one of several concurrent tort-feasors, whose obligation is solidary, does not release the other concurrent tort-feasors unless it can be established as a fact either (1) that the injured party intended to release all tort-feasors or (2) that the release constituted satisfaction of the obligation.

Having thus enunciated the rule, we would ordinarily remand the matter to the trial court for resolution of the facts in light of the rule. However, in the case at bar, it is so overwhelmingly apparent that the injured party did not intend the release of the other tort-feasor and that the release did not constitute satisfaction of the obligation, we simply reverse the judgment of dismissal with instruction to proceed under the pleadings.

■ One final matter requires resolution. Respondent contends that the appeal should be dismissed because all of the documents accessible to the trial court at the time of ruling on the motion for summary judgment were not made available to this court. However, on oral argument, counsel for respondent acknowledged that we have all the documents necessary for a resolution of the issue raised by

the appeal. In view of this acknowledgement, respondent's motion to dismiss the appeal is denied.

Judgment reversed and remanded.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied September 23, 1971.

Review denied by Supreme Court December 28, 1971.