[No. 7566–7–I.   Division One.   December 17, 1980.]

HARRY D. DeMARIS, *Individually and as Administrator,* ET AL, *Appellants,* v. SHARON J. BROWN, ET AL, *Defendants,* THE STATE OF WASHINGTON, *Respondent.*

*Clinton, Fleck, Glein & Brown* and *Lawrence B. Linville,* for appellants.

*Slade Gorton, Attorney General,* and *Donald L. Law, Assistant,* for respondent.

CALLOW, C.J.—The plaintiffs below, Kathryn DeMaris, acting individually, and Harry DeMaris, acting individually and as administrator of the estate of Thomas I. DeMaris, appeal from a judgment against the State of Washington in the amount of $0.

On June 10, 1975, Thomas I. DeMaris was killed while a passenger in an automobile driven by Curtis B. Clark. The plaintiffs commenced this suit on July 22, 1977, against the driver's estate based on the driver's alleged negligence, and against the State of Washington based on the State's alleged negligent design of the highway at the location of the accident.

Prior to trial, the plaintiffs settled with the driver's estate for $10,000. As a part of this settlement, the parties thereto entered into a settlement, release and indemnity agreement. The agreement provides in part as follows:

[T]he plaintiffs hereby acknowledge receipt from Hartford Insurance Group, insurer of Curtis B. Clark, of the sum of Ten Thousand Dollars ($10,000.00) this date, which sum the plaintiffs acknowledge to be in settlement of the disputed claim growing out of injury to and death of Thomas I. DeMaris, and the consequences flowing therefrom as a result of an accident, incident or casualty which occurred on the 10th day of June, 1975, for which injury, death and consequences flowing therefrom, the plaintiffs claimed the said Curtis B. Clark to be liable, which liability is expressly denied, and in sole consideration of the [sic] of the sum paid, the plaintiffs hereby release and forever discharge the said Curtis B. Clark, his heirs, successors, administrators and assigns and their insurer, Hartford Insurance Group, from any and all actions, causes of action, liability, claims and demands upon or by reason of any damage, loss, injury or death, arising out of the accident, incident or casualty in question.

Without limitation of the recitals contained above and as further consideration and inducement for this agreement the plaintiffs agree that it is full and final release of all claims against Curtis B. Clark for survival actions and the wrongful death of said Thomas I. DeMaris, including but not limited to the pain and suffering, if any, shortened life expectancy, loss of income and earning capacity sustained by him, and the loss of society, support, companionship, love and affection, and for injury to or destruction of parent–child relationship sustained by the plaintiffs as personal representative and parents of Thomas I. DeMaris, deceased, as well as funeral expenses and expense of last illness.

. . .

The parties mutually agree that Curtis B. Clark and the State of Washington were concurrent or successive tort feasors and were not joint tort feasors. The parties further agree that the plaintiffs do not intend to release the State of Washington from liability for the death of Thomas I. DeMaris; and the parties further agree that the release given by the plaintiffs to defendant Sharon J. Brown as personal representative of the estate of Curtis B. Clark, deceased, and the estate of Curtis B. Clark does not constitute a full satisfaction in damages for the death of Thomas I. DeMaris. The release given by the plaintiffs

to the above–named defendant is neither intended to apply to the State of Washington nor may it be so construed. The parties agree, for the purposes of settlement and release, that the independent acts, or failure to act, of each of the defendants united to cause a single injury thus constituting Curtis B. Clark and the State of Washington as concurrent tort feasors.

The agreement is signed by Mr. and Mrs. DeMaris in their individual capacities and by Mr. DeMaris as personal representative of his son's estate.

The plaintiffs and the State of Washington thereafter went to trial. At the conclusion of the trial and insofar as damages are concerned, the trial court instructed the jury only on the issue of damages to the plaintiff estate measured by the decedent's lost earning capacity. The jury entered a special verdict that the plaintiff estate had sustained total damages of $50,000, and that the decedent was 85 percent contributorially negligent. Following return of the verdict, the trial court arrived at its judgment by taking the plaintiff estate's total damages ($50,000) and multiplying that sum by the decedent's negligence (85 percent) to arrive at a figure of $7,500 against which it credited the amount of the pretrial settlement with the driver's estate ($10,000), thereby resulting in a net judgment of $0 against the State of Washington. The parties were denied costs.

The plaintiffs appeal, asserting that in a suit brought by injured parties against one of two concurrent tort–feasors it is error for the trial court to deduct the amount of the plaintiffs' pretrial settlement with a released tort–feasor from the plaintiffs' total damages attributable to the non-released tort–feasor's negligence. The plaintiffs assert that the amount of the plaintiffs' total damages should have been first diminished by the amount of the plaintiffs' pretrial settlement, and then the degree of negligence attributable to the nonreleased tort–feasor should have been applied against the difference to arrive at the amount of damages owed by the nonreleased tort–feasor.

The plaintiffs contend that the trial court erroneously deducted the $10,000 from the amount of damages attributable to the State's negligence rather than from the estate's total damages. They argue that where one codefendant is released in a pretrial settlement, the amount of that pretrial settlement should be subtracted from the plaintiff's total damages rather than from the damages allocable to the nonreleased defendant against whom the jury returned a verdict. They rely on *Elliott v. Kundahl,* 89 Wn.2d 639, 574 P.2d 732 (1978). The plaintiffs assert that the trial judge should have diminished the amount of the plaintiff's claim against the State ($50,000) by the amount of the plaintiff's pretrial settlement with the driver's estate ($10,000), applied the degree of negligence attributable by the jury to the State (15 percent) against the difference ($40,000), and then entered judgment against the State in the amount of $6,000, citing *Pierringer v. Hoger,* 21 Wis. 2d 182, 190–91, 124 N.W.2d 106, 111 (1963), and *American Motorcycle Ass'n v. Superior Court,* 20 Cal. 3d 578, 578 P.2d 899, 146 Cal. Rptr. 182 (1978).

The record presented consists solely of the clerk's papers. Among other things, the clerk's papers include the plaintiffs' complaint, their pretrial release, the court's instructions and judgment, and a brief of the plaintiffs that contains the same contention and argument set forth except that now the plaintiffs speak of the "plaintiff's" claim and damages rather than the "plaintiffs'" claim and damages as they did at trial. The prayer for damages in the plaintiffs' complaint potentially encompasses damages under the wrongful death statutes, RCW 4.20.010, RCW 4.20.020, and RCW 4.24.010, and the survival statutes, RCW 4.20.046 and RCW 4.20.060, because the complaint is brought by the DeMarises in their own right and by Mr. DeMaris as personal representative for his son's estate. We do not know if Thomas DeMaris was a minor. The plaintiffs' release with the driver's estate includes any claim based on the wrongful death and survival statutes. The sole damage issue presented to the jury was the pecuniary loss

to the estate, a measure of damages authorized under RCW 4.20.046 for the benefit of the estate as opposed to the decedent's heirs or next of kin, *Hinzman v. Palmanteer,* 81 Wn.2d 327, 501 P.2d 1228 (1972). The jury was not instructed to and did not determine what, if any, damages Mr. and Mrs. DeMaris might be entitled to in their individual capacities under RCW 4.24.010. Nevertheless, when the issue of deducting the pretrial settlement from the jury's verdict arose, the plaintiffs treated the jury's verdict as the "plaintiffs'" damages and objected to the court's judgment only by arguing that the pretrial settlement should be first deducted from the "plaintiffs'" gross claim of $50,000 against the State. The issue is framed in accordance with the arguments presented to the trial court. *See, e.g., Transamerica Ins. Group v. United Pac. Ins. Co.,* 92 Wn.2d 21, 593 P.2d 156 (1979); *Magerstaedt v. Eric Co.,* 64 Wn.2d 298, 391 P.2d 533 (1964); *Ross v. Hagen,* 51 Wn.2d 165, 316 P.2d 896 (1957); *Sweeney v. Pacific Coast Elevator Co.,* 14 Wash. 562, 45 P. 151 (1896).

We turn to a discussion of the distinction between joint and concurrent tort–feasors, and the rules applicable to releases and covenants not to sue. Joint tort–feasors must act in concert in committing the wrong, or their acts, if independent of each other, must breach a joint duty and unite in causing a single injury. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 235, 588 P.2d 1308 (1978); *Young v. Dille,* 127 Wash. 398, 404, 220 P. 782 (1923). If two or more individuals commit independent acts of negligence that concurrently produce the proximate cause of a third party's injury, they are regarded as concurrent tort–feasors. *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975). Thus, concurrent tort–feasors breach separate duties while joint tort–feasors breach a joint duty. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 235. In either case, the harm caused is indivisible and each multiple tort–feasor is personally liable for any injury for which his tortious act is a proximate cause, *i.e.,* each tort–feasor is liable for the entire harm caused and each or all may be

sued by the injured party to obtain full recovery. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 233. The parties do not argue that the State and the deceased automobile driver are not concurrent tort–feasors. *See Boeing Co. v. State,* 89 Wn.2d 443, 572 P.2d 8 (1978); *Litts v. Pierce County,* 5 Wn. App. 531, 488 P.2d 785 (1971).

The primary concern when one of two or more multiple tort–feasors execute a release or covenant not to sue with the injured party has been the effect to be given the release or covenant not to sue vis–a–vis the nonsettling defendant. Under the common law rule, a release of one joint tort–feasor releases all other joint tort–feasors regardless of whether the release was given for full or partial satisfaction, and regardless of whether the release contained an express reservation of rights against the noncovenanting tort–feasors, *J.E. Pinkham Lumber Co. v. Woodland State Bank,* 156 Wash. 117, 286 P. 95 (1930).

In order to avoid the harshness of the common law rule, plaintiffs resorted to covenants not to sue and the rule which strictly limits application of the common law release rule to joint tort–feasors. *White Pass Co. v. St. John,* 71 Wn.2d 156, 158, 427 P.2d 398 (1967); *DeNike v. Mowery,* 69 Wn.2d 357, 366, 418 P.2d 1010 (1966); *Monjay v. Evergreen School Dist. 114,* 13 Wn. App. 654, 658 n.2, 537 P.2d 825 (1975). A covenant not to sue confers a right of action upon the covenanting tort–feasor against the covenantor in the event the covenantor breaches the covenant by bringing an action. *Haney v. Cheatham,* 8 Wn.2d 310, 316, 111 P.2d 1003 (1941). The utilization of a covenant not to sue has met with qualified success due to the possibility of a plaintiff using the covenant as a means for obtaining a double recovery or an overly favorable recovery by settling with one and then the other joint tort–feasor. *See Mills v. Inter Island Tel. Co.,* 68 Wn.2d 820, 827–28, 416 P.2d 115 (1966).

In an attempt to avoid the potential abuse of covenants not to sue and to encourage settlements, *Mills v. Inter Island Tel. Co., supra* at 829, adopted the rule that the intention of the parties to distinguish a covenant not to sue

from a release will be observed unless the document operates as a release because "(1) a reasonably compensatory consideration has been paid by a codefendant (2) for the alleged tort (3) to (for the benefit of) the party plaintiff who gives the covenant not to sue." In *Mills,* Mrs. Mills sued two tort–feasors as executrix of her husband's estate, basing her claim upon the wrongful death statutes for her own benefit and that of her two stepchildren. She also sued as executrix on an assigned claim for the destruction of the decedent's airplane. Prior to trial, she approved but did not sign two documents characterized as covenants not to sue with one of the defendants for a partial consideration of $12,750 that inured solely to the benefit of the stepchildren. As executrix, she also approved and signed a covenant not to sue the defendant in consideration of $8,500 that devolved by right of subrogation to the insurer of the airplane. *Mills* held that the latter document did not operate as a release of the other defendant because Mrs. Mills received nothing in her own right and she was compelled by her fiduciary responsibilities to execute the covenant so that the beneficial claimant might obtain a settlement. *Mills v. Inter Island Tel. Co., supra* at 831–32. *Mills* further held that the $12,750 settlement was not a ground upon which the trial court could dismiss Mrs. Mills' claim against the remaining defendant because "we must look to who actually received the compensation, not the name of the nominal plaintiff." *Mills v. Inter Island Tel. Co., supra* at 832. The $12,750 could only be attributable to Mrs. Mills in her capacity as fiduciary for the stepchildren.

*Mills v. Inter Island Tel. Co., supra* at 829, adverts to the problem of double recovery as it pertains to covenants not to sue as an illusion because any settlement received by the plaintiff must be credited against any "judgment" that results from a later trial against the remaining tort–feasor, provided that the defendant gives the court notice of the prior payment. Subsequently recognizing that a reason for the common law rule regarding releases is to preclude double recovery, *Christianson v. Fayette R. Plumb, Inc.,* 7 Wn.

App. 309, 499 P.2d 72 (1972), adopted section 885 of the Restatement of Torts (1939) to handle the problem of when a document in the form of a covenant not to sue will operate as a release.

Section 885 provides as follows:

(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.

(2) A covenant not to sue one tortfeasor for a harm does not discharge any other liable for the harm.

(3) Payments made by one tortfeasor on account of a harm for which he and another are each liable, *diminish the amount of the claim* against the other whether or not it was so agreed at the time of payment and whether the payment was made before or after judgment; the extent of the diminution is the amount of the payment made, or a greater amount if so agreed between the payor and the injured person.

(Italics ours.) Though section 885 uses the word "claim," which is seized upon by the plaintiffs here as support for their argument, subsection (3) of section 885 parallels the crediting approach referred to in *Mills* and it underscores *Mills'* statement that a covenant not to sue will be distinguished from a release unless "reasonably compensatory" consideration has been paid. *Elliott v. Kundahl,* 89 Wn.2d 639, 574 P.2d 732 (1978).

In *Elliott v. Kundahl, supra,* Mr. Kundahl brought a wrongful death action as administrator for his wife's estate against an anesthesiologist, a dentist and a dental center. Prior to trial, Mr. Kundahl executed a covenant not to sue with the anesthesiologist for a consideration of $125,000. The trial court ruled, during trial against the remaining defendants, that evidence of the settlement would be admissible for the purpose of determining whether the amount was "'reasonably compensatory', that is, whether the covenant not to sue was·in fact a release." *Elliott v. Kundahl, supra* at 641. On appeal the ruling of the trial

court was reversed, the decision holding that the determination of what is "reasonably compensatory" must be dealt with as follows:

> While the reasonableness of the compensation under a covenant not to sue is a question of fact, this can best be determined and the interests of the parties better protected by submitting the case to the jury after the trial without mentioning the covenant not to sue at any time during the trial. Then, if the jury finds for the plaintiff, the court will know the value placed on the injury sustained by the plaintiff and thus, by this measure, the reasonableness of the covenant not to sue. If the verdict exceeds the amount paid under the covenant not to sue, the verdict will be reduced by that amount. On the other hand, if the jury verdict is no greater than or less than the amount paid under the covenant not to sue, the covenant will be deemed compensatory.

*Elliott v. Kundahl, supra* at 645. *See generally* Annot., 94 A.L.R.2d 352, at § 6 (1964). This is a reiteration of the crediting approach and an enunciation of the procedure to be followed in its implementation. *Mills v. Inter Island Tel. Co., supra; Christianson v. Fayette R. Plumb, Inc., supra.*

The relevance to concurrent tort–feasors of the *Mills, Christianson* and *Elliott* decisions, as they relate to covenants not to sue in the joint tort–feasor context, lies in recognition that the injured party who executes a covenant not to sue should be allowed satisfaction but no more from the other tort–feasors. Although the common law release rule has been limited to joint tort–feasors, a covenant not to sue or a release of one concurrent tort–feasor may release the other concurrent tort–feasor. The circumstances under which this will occur and the reasons therefor are stated in *Litts v. Pierce County,* 5 Wn. App. 531, 537–38, 488 P.2d 785 (1971):

> Perhaps the most significant distinction between joint liability and several liability is that in the former there is in reality only one cause of action, where as in the latter there are as many causes of action as there are debtors. Because there is, under a joint liability, only one cause of action, the chief effect thereof is that when that which

ties them together is loosed, it is loosed as to all of them. That is what is really meant when the court has said that a release of one "joint" tort-feasor is a release of all. On the other hand, as to those bound together by a solidary obligation described as "several", *satisfaction* is necessary to release the others, simply because of this same distinction. When the amount of the obligation is the full amount of the injury, the satisfaction required is also the full amount of the injury. . . .

Insofar as the solidary obligation of concurrent tort-feasors is effected by a release, we hold that it is related to the several aspect of the joint and several liability. Thus, when the release of one constitutes satisfaction of the obligation it releases all the others. Clearly the creditor cannot recover more than the full amount of the obligation owed. Thus, to the extent that the release does not satisfy the full obligation, the others are not released. Put another way, the release of one concurrent tort-feasor releases the others pro tanto.

(Citations omitted.) This crediting approach is the approach set forth in *Elliott v. Kundahl, supra,* and subsection (3) of section 885 of the Restatement of Torts, *supra.* It equally applies to releases and covenants not to sue entered into by a concurrent tort-feasor and the injured party. *See Monjay v. Evergreen School Dist. 114,* 13 Wn. App. 654, 662, 537 P.2d 825 (1975); Restatement (Second) of Torts § 885, comment *e* (1979); Restatement of Torts § 885 (1939). A problem not addressed or at issue in the cases discussed is the effect of comparative negligence on the crediting approach.

In 1973, the legislature adopted a form of pure comparative negligence as the law of this state. RCW 4.22.010.[1] The adoption of RCW 4.22.010 has not altered the rule that multiple tort-feasors are each liable for any injury of which his tortious act is *a* proximate cause and that no right of

---

[1] RCW 4.22.010 provides:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages caused by negligence resulting in death or in injury to person or property, but any damages allowed shall be diminished in proportion to the percentage of negligence attributable to the party recovering."

contribution exists at least as between joint tort–feasors. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978); *Wenatchee Wenoka Growers Ass'n v. Krack Corp.,* 89 Wn.2d 847, 576 P.2d 388 (1978).

We turn to the question of what effect, if any, the rule of comparative negligence has upon the crediting process that applies when one (or more) of two (or more) concurrent[2] tort–feasors executes a release or covenant not to sue with the plaintiff and either all or just the remaining tort–feasor(s) are subsequently found negligent.

In comparative negligence states the issue has arisen whether a plaintiff's recovery from nonsettling tort–feasors should be diminished (a) by any amount at all, (b) by the amount that the plaintiff has actually recovered in a good faith settlement, or (c) by an amount measured by the settling tort–feasor's proportionate responsibility for the injury. *E.g., Lynn v. Southwestern Elec. Power Co.,* 453 F. Supp. 599, 604 (E.D. Tex. 1978); *American Motorcycle Ass'n v. Superior Court,* 20 Cal. 3d 578, 603–04, 578 P.2d 899, 915–16, 146 Cal. Rptr. 182 (1978); *Boston Edison Co. v. Tritsch,* 370 Mass. 260, 346 N.E.2d 901 (1976); *Mihoy v. Proulx,* 113 N.H. 698, 313 A.2d 723 (1973); *Rogers v. Spady,* 147 N.J. Super. 274, 371 A.2d 285, 288 (1977); *Pierringer v. Hoger,* 21 Wis. 2d 182, 191–92, 124 N.W.2d 106, 111–12 (1963). Important in this respect have been the issues whether the plaintiff's negligence must be measured against the combined negligence of all the multiple tort–feasors, parties or not, and whether and how the jury should allocate the respective negligence of the tort–feasors. *E.g., Lemos v. Eichel,* 83 Cal. App. 3d 110, 117, 147 Cal. Rptr. 603, 606 (1978); *Pierringer v. Hoger, supra; Ross v. Koberstein,* 220 Wis. 73, 264 N.W. 642 (1936). *See* H. Woods, *The Negligence Case—Comparative Fault,* app. at

---

[2]Joint tort–feasors may be included if the release contains an express reservation of rights. *Christianson v. Fayette R. Plumb, Inc., supra* at 311.

494–95, 561, 572–73, 592–93 (1978); V. Schwartz, *Comparative Negligence,* app. B at 372–73 (1974). The plaintiffs argue that we should address these problems because the trial court's action in reducing their recovery is inconsistent with the rule of comparative negligence.

The record reveals that the plaintiffs argued to the trial court that the settlement amount should be deducted from the plaintiffs' total damages because *Monjay v. Evergreen School Dist. 114, supra* at 659, and *Christianson v. Fayette R. Plumb, Inc., supra,* dictate that settlement amounts diminish the amount of the plaintiffs' "claim" against the remaining tort–feasors. Without more, the plaintiffs asserted the "claim" to be their total damages of $50,000. The plaintiffs did not argue about whether and how in a comparative negligence case a plaintiff's recovery from the nonsettling tort–feasor should be diminished, and whether the combined or separate negligence of all the multiple tort–feasors should be determined by the jury. Neither did they argue that the State was precluded from any offset because it failed to plead release as an affirmative defense in accordance with CR 8(c) or possibly CR 15(a). Having failed to present these arguments and theories to the trial court, the plaintiffs will not be heard to raise them for the first time on appeal. *Seattle–First Nat'l Bank v. Shoreline Concrete Co., supra* at 240–41. Nevertheless, in order to convey our reasons for deciding the issue, it is necessary to state generally what arguments might have been made to the trial court. Our discussion of those arguments should not be taken as our approval of them.

Had release been pleaded as an affirmative defense and had the jury been instructed to determine the decedent's negligence in relation to the combined negligence of the decedent and both tort–feasors, it could have been argued that the plaintiffs' pretrial settlement should be deducted from the plaintiffs' damages after first reducing them by the percentage of fault attributable to the decedent. The reason advanced for this would be that deducting the settlement first from the total damages would reduce the

decedent's percentage of fault below that found by the jury and result in a double recovery. *Lemos v. Eichel, supra.* Where the plaintiff settles with one tort–feasor for $10,000, the plaintiff is found to have suffered $50,000 in damages, and the plaintiff and nonsettling tort–feasor are respectively found 85 percent and 15 percent negligent, the plaintiff could argue that no offset should be granted since a jury might have found the combined negligence of both tort–feasors to have been 20 percent or more, in which case the nonsettling tort–feasor would be jointly and severally liable for any amount exceeding $10,000. *Ross v. Koberstein, supra.* The nonsettling tort–feasor might have argued in the same situation that an offset should be deducted from his $7,500 legal liability because the tort–feasors' total negligence could have amounted to no more than 20 percent, which corresponds to the $10,000 settlement that plaintiff has received. The argument was available to the plaintiff in the same hypothetical that had the settling tort–feasor's negligence been 0 percent, no offset should be made in order to encourage settlements. *Rogers v. Spady, supra.*

■ The issue we decide is: Where the plaintiffs settle with one concurrent tort–feasor for $10,000, their damages are determined to be $50,000, and the jury finds the decedent 85 percent negligent, should the $10,000 settlement be deducted from the plaintiffs' total damages of $50,000 or should the $10,000 be offset against the $7,500 that the nonsettling defendant is otherwise legally obligated to pay, *i.e.*, the plaintiffs' total damages less the percentage of negligence attributable to the decedent?[3] We hold that the $10,000 settlement must first be deducted from the plaintiffs' total damages. The jury, without knowing of the settlement, found the total damages to equal $50,000. By reducing the $40,000 by the decedent's 85 percent contributory negligence, the comparative negligence rule is not affronted since the total percentage of contributory negligence remains the same. No one can know whether the

---

[3]The plaintiffs do not argue that no offset should be given.

tort–feasors' combined negligence might have been found to be 20 percent or less, in which case the State might not have owed anything, or more than 20 percent, in which case the State might have been liable for any excess over $10,000. The settling tort–feasor most likely wished to wash his hands clean of the whole affair. Involving the settling tort–feasor in the suit has been avoided. The trial court should have awarded the plaintiffs a judgment of $6,000.

The judgment of the trial court is reversed and the case remanded for entry of judgment in the sum of $6,000 in the plaintiffs' favor.

DURHAM, J., concurs.

DORE, J. (dissenting)—I dissent. I would affirm the trial court. The plaintiff's percentage of fault should be applied against the total amount of damage which the jury determined the plaintiff sustained. From this figure should be deducted the plaintiff's pretrial settlement. By deducting the settlement amount first, the majority reduces the plaintiff's fault percentage below that found by the jury. I approve the trial court's procedure which reduces the plaintiff's damages in accordance with the plaintiff's role in causing the injury. *Lemos v. Eichel,* 83 Cal. App. 3d 110, 118–19, 147 Cal. Rptr. 603, 606–07 (1978).

Reconsideration denied January 19, 1981.

Review denied by Supreme Court April 8, 1981.